# GARLINGTON, LOHN & ROBINSON, PLLP

DAVID C. BERKOFF
J. MICHAEL BOUCHEE
STEPHEN R. BROWN
GARY B. CHUMRAU
RANDALL J. COLBERT
LAWRENCE F. DALY
KATHLEEN L. DESOTO
CANDACE C. FETSCHER
LUCY T. FRANCE
GARY L. GRAHAM
CHARLES E. HANSBERRY
GREGORY L. HANSON
WILLIAM EVAN JONES
MAUREEN H. LENNON
BRADLEY J. LUCK
ROBERT C. LUKES
TERRY J. MACDONALD
ALAN F. MCCORMICK
CHARLES E. MCNEIL
ANITA HARPER POE

Attorneys At Law
199 West Pine • P. O. Box 7909
Missoula, Montana 59807-7909
406-523-2500
Telefax 406-523-2595
www.garlington.com

SHANE N. REELY
LARRY E. RILEY
SUSAN P ROY
ROBERT E. SHERIDAN
PETER J. STOKSTAD
KEVIN A. TWIDWELL
WILLIAM T WAGNER
KELLY M. WILLS

A. CRAIG EDDY, MD, JD
OF COUNSEL - HEALTH LAW

J C. GARLINGTON
1908 - 1995

SHERMAN V LOHN
(RETIRED)

R. H "TY" ROBINSON
(RETIRED)

September 30, 2005

Credit Suisse
As Administrative Agent, Collateral Agent, Paying Agent,
    Sole Lead Arranger and Sole Bookrunner
(as defined in the Credit Agreement dated [September 30], 2005)
Eleven Madison Avenue
New York, NY 10010

The Lenders party to the Credit Agreement referred to below

> RE: The Credit Agreement dated as of the date of this opinion letter by and among Yellowstone Mountain Club, LLC, a Montana limited liability company, Yellowstone Development, LLC, a Montana limited liability company, Big Sky Ridge, LLC, a Montana limited liability company and Credit Suisse, as Administrative Agent Collateral Agent, Paying Agent, Sole Lead Arranger and Sole Bookrunner.

Ladies and Gentlemen:

We have acted as special Montana counsel to Yellowstone Mountain Club, LLC, a Montana limited liability company, Yellowstone Development, LLC, a Montana limited liability company, and Big Sky Ridge, LLC, a Montana limited liability company (each referred to individually as a "Loan Party" and collectively as the "Loan Parties") in connection with, and are delivering this opinion pursuant to, the Credit Agreement, dated as of September 30, 2005, and all amendments thereto, (the "Credit Agreement"), by and between, among others, the Loan Parties, the lenders listed on the signature pages thereto, and Credit Suisse, as Administrative Agent, Collateral Agent, Paying Agent, Sole Lead Arranger and Sole Bookrunner.

## I.   Documents and Matters Examined

For purposes of giving this opinion, our review has been limited to the examination of the Loan Documents, as that term is defined in the Credit Agreement. We also have reviewed such other documents and instruments, statutes, court decisions, and other matters as we have considered necessary and appropriate under circumstances to render the following opinion. Terms used in capitalized form which are not otherwise defined herein have the meanings assigned thereto in the Credit Agreement.

*Credit Suisse*
*RE: Yellowstone Club*
*September 30, 2005*
*Page 2*

**II.    Opinion**

It is our opinion that, as of the date of this letter:

1. Each Loan Party is duly organized, validly existing, qualified to do business under the laws of the State of Montana (the "State"), and in good standing with the State.

2. Each Loan Party has the requisite power and authority to execute, deliver and perform its obligations under the Loan Documents.

3. Each Loan Party has duly authorized the execution, delivery and performance of the Loan Documents, and the Loan Documents have been duly executed and delivered by the Loan Parties.

4. The mere execution of the Loan Documents by Lenders, and the sole taking and holding of the Loan Documents by the Lenders will not require the Lenders to: (a) qualify to do business in Montana, or (b) register, qualify, or otherwise file with any state or local governmental agency to enable the Lenders to have access to the federal and state courts in Montana to enforce the Loan Documents. Under Montana Code Annotated § 35-1-1026(2)(h), the "securing or collecting debts or enforcing mortgages and security interests in property securing debts," does not constitute "transacting business" in Montana.

5. Execution and delivery by the Loan Parties, and performance of their respective obligations under, the Loan Documents does not: violate any of their organizational documents; violate any laws; to the best of our knowledge violate any orders, judgments, or decrees; to the best of our knowledge breach any material contract or create liens or encumbrances; or require filing or registration with any governmental agency.

6. The Property is taxed separately without regard to other real property. Subject only to the limitations and qualifications as to compliance with Montana subdivision laws stated in Section IV below, the Property may be mortgaged, conveyed and otherwise dealt with as a separate lot or parcel.

7. Subject to the limitations and qualifications with respect to usury stated in Section IV below, the Obligations under the Credit Agreement will not be usurious under the laws of Montana.

8. To the best of our knowledge, no actions, suits or proceedings are pending or threatened against the Loan Parties, and no orders or injunctions have been entered preventing or adversely affecting the consummation of the transactions contemplated by the Loan Documents, the validity or enforceability of the Loan Documents, or the priority of the liens. The Loan Parties are not in default with respect to any orders, writs, injunctions, decrees or demands of any court or governmental agency.

*Credit Suisse*
*RE: Yellowstone Club*
*September 30, 2005*
*Page 3*

9. No fees, taxes or governmental charges (other than customary recording fees) are required to be paid in connection with the execution, delivery, filing or recording of the Loan Documents.

10. The Mortgage, when duly recorded in the appropriate real estate records of the County Clerk and Recorder in the county where the Property is located, will constitute and be effective to create a valid lien of record on the Property under the laws of the State of Montana.

11. The Financing Statements are in a form sufficient for filing with the Secretary of State of the State of Montana. Upon the proper filing of the Financing Statements in the Office of the Secretary of State of the State of Montana, the security interest in favor of the Agent on behalf of the Lenders in the collateral described in the Security Agreement will be perfected to the extent a security interest in such collateral can be perfected under the UCC by the filing of a financing statement in Montana.

12. The Control Agreement constitutes a legal and binding obligation of, and is valid and enforceable against, each Loan Party in accordance with the terms thereof.

13. The Control Agreement creates in favor of the Agent on behalf of the Lenders a valid and enforceable security interest that will be perfected upon execution and delivery of the Control Agreement.

**III. Assumptions**

For purposes of this opinion, we have assumed, with your approval and without independent investigation, the following:

1. The Loan Documents are in the form that we have examined and have been properly authorized and, to the extent necessary, executed and delivered by the parties thereto (other than the Loan Parties).

2. One or more of the Loan Parties has fee title to the Property (as that term is defined in the Mortgage), and the description of the real property included in the Mortgage accurately describes the property intended to be covered thereby.

3. All signatures are genuine (other than those of the Loan Parties), all records, documents, and instruments submitted to us as originals are authentic, and all records, documents, and instruments submitted to us as copies or unexecuted copies conform to the originals.

4. Legally sufficient consideration exists with respect to each party to each of the Loan Documents.

*Credit Suisse*
*RE: Yellowstone Club*
*September 30, 2005*
*Page 4*

### IV. Limitations, Qualifications and Exceptions

The foregoing opinion is subject to the following limitations, qualifications, and exceptions:

Such qualifications, however, do not render any of the Loan Documents invalid as a whole, and there are legally adequate remedies for Lender's realization of the principal benefits and security intended to be provided by the Reviewed Documents.

1. We express no opinion regarding the enforceability of any of the Loan Documents except as expressly stated herein. Specifically, we cannot assure you that the following provisions of the Mortgage are enforceable under Montana law:

    (a) A number of the advance contractual waivers, especially those that may be waiving a statutory right, may be unenforceable as against public policy in Montana.

    (b) There is no absolute right to the appointment of a receiver under Montana law, and appointment may be dependent on the value of the security.

    (c) There is no absolute right to injunctive relief under Montana law.

    (d) The Lender's choice of remedies against the Borrower and/or the Guarantors, and the order in which they are enforced, is subject to Montana's "one form of action" statute contained in Montana Code Annotated § 71-1-222.

    (e) The right to recover attorney's fees is reciprocal in Montana.

    (f) The amount of future loan advances or total secured indebtedness that may be outstanding at any given time must be stated in the Mortgage. Montana Code Annotated § 71-1-206 states that the "total amount of indebtedness that may be secured by the Mortgage may decrease or increase from time to time, but the total principal amount of the obligations secured at any one time may not exceed the face amount stated in the Mortgage together with interest as provided in the instrument secured by the Mortgage."

    (g) A secured party may purchase personal property at private sale only if the collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations.

    (h) Service of process by mail may not be enforceable in Montana.

*Credit Suisse*
*RE: Yellowstone Club*
*September 30, 2005*
*Page 5*

    (i)    The mortgage, conveyance or other transfer of any portion of the Property is subject to compliance with the Montana Subdivision and Platting Act and the local subdivision rules adopted by Madison County, Montana.

    (j)    Our opinion as to usury set forth in Section II.7 above assumes that each of the Lenders, as defined in the Credit Agreement, is a bank, building and loan association, savings and loan association, trust company, credit union, credit association, consumer loan licensee, development corporation, bank holding company, or a mutual or stock insurance company organized pursuant to state or federal statutory authority and subject to supervision, control, or regulation by an (i) agency of the state of Montana, (ii) an agency of the federal government, or a subsidiary of an entity described in (i) or (ii).

2.    We express no opinion concerning the effect of laws and regulations relating to securities, pension and employee benefits, taxes (except as expressly stated in this opinion), and any laws, regulations, orders or interpretations not generally applicable to transactions of the type upon which we are opining in this letter.

3.    With regard to our opinion, we note the possible imposition of the Montana Corporation Income Tax as provided under Montana Code Annotated §§ 15-31-401 through 408. Those statutes impose a state income tax upon a corporation's net profit "derived from sources in this State" (other than income subject to the State Corporation License Tax). Montana Code Annotated § 15-31-403(2) provides:

> (2)    Income from sources within this State includes income from tangible or intangible property located in or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce, but does not include interest paid on loans held by out-of-state financial institutions recognized as such in the state of their domicile, secured by Mortgage, trust indentures, or other security interests on real or personal property located within the state, if the loan is originated by a lender doing business in Montana and assigned out-of-state and there is not activity conducted by the out-of-state lender in Montana except periodic inspection of the security.

4.    To the extent the Loan Documents or this opinion letter make reference to documents and instruments other than the Loan Documents, the opinion expressed herein is subject to the matters that would be revealed by examination of such documents and instruments.

5.    Using words such as "known to us," "our knowledge" or words of similar import ("Knowledge Language") as a basis for an opinion, signify that, in the course of our

*Credit Suisse*
*RE: Yellowstone Club*
*September 30, 2005*
*Page 6*

    representation of the Loan Parties, no facts have come to our attention that give us actual knowledge that any such opinions or other matters are not accurate. Except as otherwise stated in this opinion, we have undertaken no investigation or verification of such matters. Further, Knowledge Language as used in this opinion is intended to be limited to the actual or constructive knowledge of the attorneys within our firm who have been directly involved in representing the Loan Parties.

6.   Our opinions are based upon and limited to the existing laws of the State of Montana on the date of this letter. We assume no obligation to update or supplement this opinion. We have not made a review of, and express no opinion concerning, the laws of any jurisdiction other than the State of Montana. No opinion is implied or is to be inferred beyond the matters expressly stated herein. This letter is our opinion as to certain legal conclusions as specifically set forth herein, and is not and shall not be deemed to be a representation or opinion as to any factual matters.

7.   Our opinions are limited to the Loan Parties as of the date of this opinion letter. We express no opinion as to any Person who might become a Loan Party after the date of this opinion letter.

This opinion letter is governed by and shall be interpreted in accordance with the Legal Opinion Accord ("Accord") of the ABA Section of Business Law (1991), as modified by the ABA/ACREL Real Estate Report ("Report"). As a result, it is subject to a number of qualifications and limitations, all as more particularly described in the Accord and the Report.

The foregoing opinion is being delivered solely to the addressees (*i.e.*, the Administrative Agent and the Lenders) named in this letter, their successors and assigns, and may not be relied upon by any other person or entity and may not be disclosed, quoted, filed with a governmental agency or otherwise referred to without our written consent.

                                                Very truly yours,

                                                GARLINGTON, LOHN & ROBINSON, PLLP

                                                By   *[signature]*
                                                      Stephen R. Brown

SRB:kaw