UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor. | Case No. **08-61570-11** |
| **TIMOTHY L BLIXSETH**,<br><br>Plaintiff.<br><br>-vs-<br><br>**MARC S KIRSCHNER, TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**,<br><br>Defendant. | Adv No. **09-00014** |

*MEMORANDUM of DECISION*

At Butte in said District this 22nd day of January, 2010.

Under advisement in this Adversary Proceeding is the Motion for Leave to File an Amended Answer and Counterclaim filed by Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust ("YCLT"), on November 25, 2009, at docket entry no. 353. After due notice, a hearing on the YCLT's Motion was held January 5, 2010, in Butte. Shane P. Coleman of Billings, Montana and Steven L. Hoard of Amarillo, Texas appeared on behalf of YCLT and

1

Joel E. Guthals of Billings, Montana appeared on behalf of the Plaintiff-Intervenor, Timothy L. Blixseth ("Blixseth"). The Court heard comments from counsel, but no witness testimony or exhibits were offered into evidence.

YCLT seeks in its Motion to amend the answer and counterclaim previously filed in this case by the Debtor and the unsecured creditors' committee. YCLT asserts that the primary changes contained in the proposed amended answer are (a) the affirmative pleading in paragraph 31 that the Debtors' causes of action against Blixseth are not barred by the applicable statute of limitations under the discovery rule, the doctrine of fraudulent concealment, and/or the doctrine of adverse domination and (b) the affirmative pleading in paragraph 38 that the Debtors' release of Blixseth executed in conjunction with the Marital Settlement Agreement is unenforceable as a matter of law because it was given without consideration to the Debtors and constitutes a fraudulent conveyance. The primary changes in the proposed Amended Counterclaim are the addition of causes of action for violations of MONT. CODE ANN. ("MCA") § 35-8-604(1), conversion, unjust enrichment, and punitive damages (Sections VI, X, XI, and XII, respectively). Otherwise, the changes in YCLT's proposed Amended Answer and Counterclaim are non-substantive. No new facts are alleged, other than with respect to incontrovertible procedural facts that have been changed to reflect the current posture of the case.

YCLT contends that its motion to amend is governed by F.R.Civ.P. 15(a), which provides that a "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." Blixseth counters that once a court has issued an order pursuant to F.R.Civ.P 16(b), if a party seeks to amend an answer the matter is governed by Rule 16 and not by Rule 15.

BACKGROUND

By way of background, Blixseth and his former spouse, Edra Blixseth ("Edra"), were the founders of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, which limited liability companies are referred to generally by this Court as the Yellowstone Club entities. Blixseth and Edra were also the founders of Yellowstone Club World, LLC, Big Springs Realty, LLC and BLX Group, Inc., f/k/a Blixseth Group, Inc. or BGI. Blixseth was in control of all the aforementioned entities until August of 2008, when Blixseth turned ownership and control of said entities over to Edra pursuant to the couple's marital settlement agreement. Shortly thereafter, on November 10, 2008, Edra caused the Yellowstone Club entities to seek protection under Chapter 11 of the Bankruptcy Code.[1] In addition, an involuntary bankruptcy petition was filed against Yellowstone Club World, LLC on January 25, 2009, Big Springs Realty, LLC filed a voluntary Chapter 7 bankruptcy petition on June 5, 2009, and an involuntary Chapter 11 bankruptcy petition was filed against BLX Group, Inc. on September 21, 2009. Finally, Edra personally sought protection under Chapter 11 of the Bankruptcy Code on March 26, 2009. Edra's bankruptcy case was converted to Chapter 7 of the Bankruptcy Code on May 29, 2009.

During several debtor-in-possession financing hearings in the Yellowstone Club entity bankruptcies, many of which were attended by Blixseth's counsel, certain parties discussed a $375 million loan that the Yellowstone Club entities obtained from Credit Suisse. Those same

---

[1] Under the Yellowstone Club entities' confirmed Third Amended Chapter 11 plan, the bankruptcies of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, and Yellowstone Club Construction Company, LLC were substantively consolidated, and are being jointly administered with the Chapter 11 bankruptcy of Big Sky Ridge, LLC, under the case number, 08-61570, reflected in the caption of this Memorandum of Decision.

parties also discussed Blixseth's personal use of the loan proceeds, including the notes that Blixseth, on behalf of then BGI, executed in favor of the Yellowstone Club entities when Blixseth removed a substantial amount of the Credit Suisse loan proceeds from the Yellowstone Club entities.  Those discussions eventually prompted the Court to schedule a show cause hearing on January 13, 2009, for parties in interest to appear and show cause why the Court should not lift the automatic stay to allow enforcement of the three Promissory Notes between the Debtors and the now BLX Group, Inc. in the approximate stated amount of $275,000,000.  Following the January 13, 2009, hearing, the Court entered an Order on January 16, 2009, lifting the automatic stay to allow "[the Official Committee of Unsecured Creditors], as fiduciary of the bankruptcy estate, [to] conduct a full review of the causes of action belonging to [the Yellowstone Club entities] that are related to the Promissory Notes to determine how [the Yellowstone Club entities'] bankruptcy estates should best proceed to recover the divested proceeds of the Credit Suisse loan[.]"

    The unsecured creditors' committee, on February 11, 2009, filed a combined "Notice of Claim Against Credit Suisse, Objection to Claim of Credit Suisse, and Motion for Authorization to File Complaint Against Credit Suisse."  Blixseth's counsel received notice of the unsecured creditors' committee's February 11, 2009, combined pleading, including the proposed complaint attached thereto.  In anticipation of the committee's complaint and as a protective measure, Credit Suisse filed a complaint against the Yellowstone Club entities and the unsecured creditors' committee on February 25, 2009, thereby commencing this Adversary Proceeding.  Credit Suisse's complaint was accompanied by a Motion to Expedite Proceedings and Set an Immediate Scheduling Conference.

The unsecured creditors' committee then filed its own complaint against Credit Suisse and John Does 1-15 on March 3, 2009, thereby commencing Adversary Proceeding 09-00017. This Adversary Proceeding and Adversary Proceeding 09-00017 were consolidated by the Court on March 3, 2009.  Blixseth's counsel, along with the other attorneys involved in the Yellowstone Club entities' bankruptcies, including counsel for the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse, appeared at a hearing held March 4, 2009.  At the March 4, 2009, hearing, counsel for the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse discussed the need for an expedited trial in the consolidated Adversary Proceedings.  At the conclusion of the March 4, 2009, hearing, the Court directed the parties to submit a proposed scheduling order.  On March 11, 2009, the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse filed a Stipulated Scheduling Order, which the Court adopted as the Scheduling Order governing this consolidated Adversary Proceeding.  The Scheduling Order set April 22, 2009, as the date for commencement of trial.

On March 16, 2009, Blixseth filed a Motion to File Complaint in Intervention which reads in part:

> By this action, Mr. Blixseth seeks an expedited declaratory judgment confirming that the Loan Transaction does not constitute a fraudulent transfer as alleged by the Committee. Mr. Blixseth also seeks a declaration that any claims regarding Mr. Blixseth's fiduciary duties to the Yellowstone Club are time-barred. In the alternative, Mr. Blixseth seeks a declaratory judgment confirming he did not breach any fiduciary duty to the Club by entering into and performing obligations under the Loan Agreement and that he did not have a fiduciary duty to the Club's other creditors regarding the Loan Transaction.

Three days after Blixseth filed the Motion to File Complaint in Intervention, Blixseth filed a request for expedited hearing on the motion to intervene because it was "essential that Mr.

5

Blixseth be allowed to intervene immediately to participate in discovery and pretrial proceedings." The Court granted Blixseth's request for expedited hearing.

At the expedited hearing held March 24, 2009, Joel Guthals appeared on behalf of Blixseth and argued that, under F.R.Civ.P. 24(a)(2), applicable under Bankruptcy Rule 7024, "the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Mr. Guthals explained that the committee's complaint contained at least 15 allegations that directly mentioned Blixseth and included two claims directly against Blixseth. Given the absence of any opposition, the Court granted Blixseth's motion to intervene. While the Court advised Mr. Guthals that it would entertain requests to extend discovery and other such deadlines, the Court made it very clear to Mr. Guthals that trial would commence on April 22, 2009, as scheduled, and that Blixseth would not be permitted to delay the proceedings.

Mr. Guthals promptly filed Blixseth's complaint in intervention on March 24, 2009, and on March 25, 2009, Blixseth filed a request for shortened time for the other parties-in-interest to respond to his complaint in intervention, which the Court granted. However, despite the Court's prior directive to Blixseth and his counsel that they be ready for trial on April 22, 2009, Blixseth filed a Motion to Amend Scheduling Order and Continue Trial Date on March 26, 2009, arguing in part:

> 11. On behalf of Mr. Blixseth, the undersigned requests that the present trial date be continued to a date and time convenient to the Court and counsel, but not earlier than May 11, 2009 and that the pretrial deadlines be adjusted and the time

6

> for parties to respond to discovery requests be shortened, all to allow Mr. Blixseth to have a fair opportunity in the trial of this consolidated adversary proceeding.
>
> 12. Mr. Blixseth and his lawyers appreciate the Court's need to promptly decide the issues in this case, prior to confirmation of the Chapter 11 Plan, and are willing and able to handle this litigation in an expeditious fashion, as they have so far demonstrated.

Following a hearing held March 27, 2009, the Court entered an Order denying Blixseth's motion for continuance, explaining:

> The Court has tentatively scheduled May 18, 2009, as the date for the hearing on confirmation of the Debtors' Chapter 11 Plan. This Court scheduled May 18, 2009, as the confirmation hearing date because the Court has other commitments between May 20, 2009, and June 9, 2009. A continuance of the April 22, 2009, trial in this proceeding would necessarily result in the confirmation hearing on the Debtors' Chapter 11 Plan being continued to the latter part of June. The issues in this proceeding need to be resolved prior to the hearing on confirmation of Debtors' Chapter 11 Plan and from what the parties have conveyed to the Court, the hearing on confirmation of Debtors' Chapter 11 Plan must be held prior to [June 10, 2009, because Debtors' DIP financing expires in May of 2009]. Thus, Blixseth's request for a continuance must be denied.

Shortly before the scheduled commencement of trial, Blixseth filed on April 14, 2009, an emergency motion to dismiss the unsecured creditors' claims against Blixseth. In said emergency motion, Blixseth claimed that the unsecured creditors committee had violated Blixseth's attorney-client relationship and gained confidential attorney-client information from attorney Stephen R. Brown on matters that were the subject of the litigation in the consolidated adversary proceedings. Blixseth argued ad nauseam that he had been damaged by Stephen R. Brown's alleged divulgence of information that was protected by Blixseth's attorney-client privilege.

Blixseth's counsel also took every opportunity to complain that Blixseth was denied due process because of his inability to properly prepare for trial given the speed with which the matter went to trial. For example, on the eve of trial, Blixseth's counsel filed an expedited

motion to bifurcate trial of claims regarding Blixseth arguing that Blixseth had not had an opportunity to conduct and complete adequate discovery and trial preparation. In response to that argument, the Court wrote:

> The Committee and the Debtors oppose Blixseth's motion for bifurcation arguing that this case has been a monumental undertaking for every party, not just Blixseth. Once Blixseth asked to be a part of this case, the parties worked with Blixseth–including delaying Blixseth's deposition while he was on his honeymoon–and now Blixseth is an integral part of this proceeding. Credit Suisse similarly opposes Blixseth's request arguing that Credit Suisse could potentially be collaterally estopped from proceeding with its claims against Blixseth.
>
> The Court agrees with the positions of the Committee, Debtors and Credit Suisse regarding bifurcation. Particularly as Blixseth's counsel filed a notice of appearance on November 24, 2008. Moreover, Blixseth's counsel received notice of the Committee's proposed complaint as early as February 11, 2009, and while Blixseth is not specifically named as a defendant in said complaint, as Blixseth's counsel argues, it's quite apparent from a reading of the complaint that Blixseth is one of the John Does. Blixseth's request for bifurcation would put this entire proceeding into a tailspin at this juncture, resulting in a vicious circle of piecemeal litigation.

Blixseth next complained on April 22, 2009, the date trial was scheduled to commence, that the other parties in that matter had not formally produced all their exhibits for Blixseth. After considering Blixseth's numerous grievances, the Court, for Blixseth's benefit, reluctantly delayed the trial for a period of one week, explaining:

> [T]he Court is troubled by the parties' lackadaisical attitude toward producing their exhibits to each other. While the Committee did not have a great deal of documents to produce in this case, the Committee . . . established an FTP server where all the parties could deposit all documents relevant to this case. That server contains thousands and thousands of pages of documents. Because all the parties, including Blixseth, had access to the FTP server, the parties failed to produce their exhibits to each other under the time set forth in the Scheduling Order, as amended on April 16, 2009. To be specific, even though exhibits were to be provided to opposing parties on April 20, 2009, Blixseth did not receive some exhibits until 11:00 p.m. on the eve of trial. Moreover, as of 09:00 a.m. on the day of trial, this Court did not yet have a pretrial order from the parties. The Court will not allow this case to go forward if it would deny a party its Constitutional right to fundamental due process.

      Blixseth now has copies of the Debtors' Exhibits, the Committee's Exhibits and Credit Suisse's Exhibits. Because bifurcation is not a viable option, the Court's only alternative is to delay the trial to afford Blixseth time to review and digest the exhibits from other parties.

      Blixseth's counsel also argued on a regular basis that Blixseth was being denied due process because the unsecured creditors' committee, the Debtors and Credit Suisse had a full month more to prepare for trial because Adversary Proceeding 09-14 was commenced on February 25, 2009, yet Blixseth did not file his motion to intervene until March 16, 2009. The evidence showed otherwise. The parties all agreed that Blixseth was originally named as a defendant in the committee's complaint and in fact, on or about February 7, 2009, the committee's counsel contacted Blixseth's counsel, Michael Flynn, as a courtesy, prior to the date that the Committee filed its Complaint, to apprise Blixseth that he was going to be named as a defendant. About this same time, Blixseth was making noise that he was going to possibly put an end to the increasing litigation associated with the Debtors' bankruptcy cases by proposing to pay many of the unsecured creditors in full. Whether for that reason or another unstated reason, Blixseth was ultimately excluded from the committee's complaint as a named defendant.

      Still, as Blixseth's counsel explained, the complaint filed in Adversary Proceeding No. 09-17 contained numerous references to Blixseth. Thus, Blixseth felt compelled to intervene. While Blixseth was not granted leave to officially intervene until March 24, 2009, Blixseth knew the Committee had its sights on him as early as February 7, 2009. Accordingly, Blixseth had just as much time as the other parties to prepare for trial, yet Blixseth continued to complain that he was being denied due process under the deadlines and trial date set forth in the stipulated scheduling order.

Following the eventual trial in this matter and to facilitate confirmation of the Debtors' plan, the Court entered a Partial and Interim Order on May 12, 2009. The Partial and Interim Order dealt solely with the Debtors' and the unsecured creditors' claims against Credit Suisse. The Court specifically noted in the Partial and Interim Order that the Court was issuing "an interim ruling for purposes of facilitating the upcoming auction of the Debtors' assets" and that a detailed memorandum of decision and order would be entered at a later date to decide all matters heard at trial.

On June 11, 2009, the Court entered its subsequent Memorandum of Decision in which it denied Blixseth's then pending motions to dismiss. First, the Court "found absolutely no evidence that Brown violated Blixseth's attorney-client privilege" concluding that "Blixseth's arguments on this point are nothing but baseless allegations intended to derail these proceedings." The Court also wrote in the June 11, 2009, Memorandum of Decision that:

> The evidence to date is not favorable for Blixseth. However, this Court is very cognizant of how fast this matter went to trial, and thus, the Court will keep the record open and will set a further scheduling conference in August. At that time, the Court will schedule a continued trial date at which the parties will be afforded additional time to present additional evidence for and against Blixseth. By keeping this record open and allowing Blixseth additional time to prepare for trial, the Court will permit Blixseth an opportunity to further develop the merits of his case with new, not cumulative, evidence and will further permit and authorize Blixseth to immediately pursue any additional new, not cumulative, discovery that may be permissible under the Federal Rules of Bankruptcy Procedure, without waiting for the August scheduling conference.

Because the Court was continuing the trial, the Court denied Blixseth's motion to dismiss wherein he argued that he was being denied due process.

After the Court entered the above Memorandum of Decision on June 11, 2009, the Court entered an Order on June 29, 2009, dismissing all claims brought by or against Credit Suisse in

this consolidated Adversary Proceeding. The Court also vacated its Partial and Interim Order entered May 12, 2009.

In addition, on August 12, 2009, the Court conducted an additional scheduling conference. Following the scheduling conference, the Court entered a further scheduling order which directed that trial would resume on February 24, 2010. The August 12, 2009, scheduling order does not contain any provision for amendment of pleadings, but revisions to the Pretrial Order are to be filed on or before February 17, 2010.

After entry of the further scheduling order on August 12, 2009, YCLT filed a Motion for Party Substitution on September 3, 2009, seeking to substitute YCLT in place of the unsecured creditors' committee and the Debtors on grounds that YCLT is the successor-in-interest to the claims brought by the unsecured creditors' committee and the Debtors in this action, which were transferred to YCLT on July 17, 2009, pursuant to the Debtors' confirmed Third Amended Plan and a certain Assignment and Assumption Agreement. YCLT's motion for substitution was granted on September 18, 2009.

DISCUSSION

Blixseth argues that YCLT's motion to amend is improper at this time because YCLT did not request amendment to the pretrial order, did not demonstrate that its amendments are for good cause, and did not demonstrate that failure to grant such amendments would create manifest injustice. First, despite Blixseth's arguments to the contrary, amendment to the pretrial order was potentially contemplated because the Court's further scheduling order entered August 12, 2009, provides that "[a]ny revisions to the Pretrial Order shall be filed with the Court on or before February 17, 2010."

11

Nevertheless, this Court agrees with Blixseth that in the Ninth Circuit, a request for leave to amend made after the entry of a Rule 16 Scheduling Order is governed primarily by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir.1992). Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge...." F.R.Civ.P. 16(b). If good cause is shown, the party must then demonstrate that amendment was proper under Rule 15. *Johnson*, 975 F.2d at 608; F.R.Civ.P. 15, 16(b). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." F.R.Civ.P. 15(a). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the Complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir.1989). Consideration of prejudice to the opposing party "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003). Given the liberal standards mandated by Rule 15, "the nonmovant bears the burden of showing why amendment should not be granted." *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986).

This Adversary Proceeding is not ordinary under any standards. As previously recognized by this Court, this matter went to trial at record speed. That fact, in part, prompted the Court to continue the trial for Blixseth's benefit. This Adversary Proceeding started with three parties, the Debtors, the unsecured creditors' committee and Credit Suisse. Blixseth joined the proceedings shortly thereafter. The foregoing four parties were the only parties at Phase I of the trial. Since conclusion of Phase I of the trial on May 6, 2009, three of the parties have left

these proceedings, namely the Debtors, the unsecured creditors' committee and Credit Suisse. YCLT was substituted in. YCLT did not come into existence until after Phase I of the trial was concluded and thus, YCLT could not have participated in the Pretrial Order that was entered by this Court in April of 2009.

Moreover, although counsel for YCLT attended the further scheduling conference held August 12, 2009, YCLT was not officially substituted as a party in this proceeding until after the Court entered the further scheduling order. For the reasons discussed above, the Court finds that YCLT has demonstrated good cause for its proposed amendment and has also demonstrated that amendment is proper under Rule 15. Therefore, YCLT's motion to amend is granted.

Finally, the Court notes that Blixseth filed a Motion to Continue Trial on January 16, 2010, at docket entry no. 474, arguing that a six month continuance of the deadlines and trial date in this matter "is mandated by the need for transparency in the discovery process and the rights of Timothy Blixseth to adequately defend himself." It is well-settled that trial courts have broad discretion in the regular management of their own calendars. *See, e.g., Agcaoili v. Gustafson*, 844 F.2d 620, 624 (9th Cir. 1988) ("A trial court has the power to control its own calendar."); *Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("The trial court possesses the inherent power to control its own docket and calendar."); *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978) (district court has broad discretion as an aspect of its inherent right and duty to manage its own calendar).

Blixseth's trial tactics in this proceeding and other proceedings before this Court are wearing thin on the Court. Blixseth and his counsel are masterful in their attempts to bring the

legal process to a grinding halt. This Court has already continued the trial in this matter for a period of ten months for Blixseth's benefit and convenience. That 10-month continuance did not benefit or convenience any other party, including this Court. Blixseth's current request to further delay these proceedings is not well-taken and is, therefore, denied.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Motion for Leave to File an Amended Answer and Counterclaim filed by Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust filed November 25, 2009, at docket entry no. 353, is GRANTED; and

IT IS FURTHER ORDERED that Timothy L. Blixseth's Motion to Continue Trial filed January 16, 2010, at docket entry no. 474, is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana