| | |
|---|---|
| Charles W. Hingle (1947) | Steven L. Hoard |
| Shane P. Coleman (3417) | John G. Turner, III |
| HOLLAND & HART LLP | MULLIN HOARD & BROWN, LLP |
| 401 North 31st Street, Suite 1500 | 500 South Taylor, Suite 800, LB# 213 |
| P.O. Box 639 | P.O. Box 31656 |
| Billings, Montana 59103-0639 | Amarillo, Texas 79120-1656 |
| (406) 252-2166 (telephone) | (806) 372-5050 (telephone) |
| (406) 252-1669 (facsimile) | |
| chingle@hollandhart.com | |
| spcoleman@hollandhart.com | |

Brian A. Glasser
Athanasios Basdekis
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555 (telephone)

**ATTORNEYS FOR MARC S. KIRSCHNER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re:<br><br>Yellowstone Mountain Club, LLC,<br><u>et al</u>.,[1]<br><br>        Debtors.<br><br>**TIMOTHY BLIXSETH,**<br><br>        Plaintiff/Counterclaim Defendant,<br>v.<br><br>**MARC S. KIRSCHNER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST,**<br><br>        Defendant/Counterclaimant. | Chapter 11<br>Case No. 08-61570-11-RBK<br><br>Adversary No. 09-00014 and consolidated with Adversary No. 09-00017-RBK<br><br>**OPPOSITION TO MOTION FOR SANCTIONS FOR SPOLIATION OF ELECTRONIC EVIDENCE**<br><br>**NOTICE OF HEARING:**<br>**Date:**    **February 11, 2010**<br>**Time:**    **9:00 AM**<br>**Location:  400 North Main,<br>                  Butte, MT** |

---

[1] The Debtors are Yellowstone Mountain Club, LLC, Yellowstone Development Club, LLC and Big Sky Ridge, LLC, which entities are substantively consolidated and Yellowstone Club Construction Co., LLC, which is jointly administered with the other Debtors.

Marc S. Kirschner ("Trustee"), as Trustee of the Yellowstone Club Liquidating Trust ("Trust"), hereby opposes Timothy Blixseth's ("Blixseth") motion for sanctions for intentional spoliation of electronic evidence ("Motion") in the above matter. In support, the Trustee respectfully states as follows:

## DISCUSSION

**A.    Background**

1. Blixseth's Motion is yet another transparent attempt to delay or hinder the continuation of his trial, which is set for February 24, 2010.

2. Blixseth's Motion should be denied because, when stripped to its essence, it simply repackages arguments that have already been rejected by this Court.

3. In his current Motion, Blixseth complains, yet again, that he has been denied evidence relating to his allegations of a grand conspiracy between Edra Blixseth and Cross Harbor Capital Partners ("Cross Harbor"). (See Docket 473, Blixseth Mot. at 2 (complaining about the need to recover allegedly conspiratorial communications between Edra Blixseth and Cross Harbor).)

4. But that is the very same argument that Blixseth attempted to use to justify his recently filed — *and recently rejected* — Motion to Continue Trial dated January 16, 2010. (See Docket 474.) As the opening paragraph in his Motion to Continue Trial made clear, the crux of Blixseth's claims then, as now, was that he had been "denied key evidence in this matter due to the shockingly destructive and obstructive discovery tactics of Edra Blixseth, Cross Harbor Capital Partners, and Credit Suisse." (See Docket 474, at 1.) This Court dutifully considered Blixseth's allegations — and then rejected them in a lengthy, detailed and well-reasoned Memorandum Opinion issued on January 22, 1010. (See Docket 480, ibid.)

5. Similarly, the very same parties that Blixseth once again complains about in his current Motion — Edra Blixseth and Cross Harbor — were both in front of this Court just a short while ago in two discovery-related hearings on January 12, 2009. Again, this Court resoundingly

rejected Blixseth's claims that Edra Blixseth or Cross Harbor had engaged in discovery abuse or that Blixseth should be given additional time to depose them or obtain additional documents from them. (See Dkt. Entries 466, 467, and 468.)

6. Having lost those extensively briefed and thoroughly considered discovery motions, Blixseth should not now be allowed to re-assert the very same losing arguments in order to get a second — or third or fourth — bite at the apple.

B. **No Remedies Against the Trust**

7. The Trust believes that Blixseth's claims of spoliation are completely baseless. Nevertheless, the Trust wishes to emphasize that not even Blixseth himself claims that the Trust is somehow guilty of such spoliation. This point is important because, even assuming, for the sake of argument alone, there is an ounce of merit to Blixseth's spoliation argument — which the Trust does not believe there is — the remedy for spoliation would *not* be a continuance of the trial involving the Trust or the imposition of any adverse rulings or sanctions against an innocent party (here, the Trust). Moreover, the remedy would certainly *not* be dismissal of the action or entering a dispositive judgment as Blixseth suggests in his motion. See, e.g., Oliver v. Stimson Lumber Co., 297 Mont. 336, 344-353, 993 P.2d 11, 17-23 (1999) (recognizing the tort of spoliation of evidence, whether intentional or negligent, as an independent cause of action with respect to *third parties* who despoil evidence).

8. Instead, as the allegations of spoliation are against third parties, the remedy would be for Blixseth to sue the alleged spoliator(s) in a separate and independent action. See, e.g., Bolan v. Smiley, 2007 U.S. Dist. LEXIS 94462, 5-6 (Mont. Dist. 2007) (identifying potential remedies against spoliator — not an innocent party — and confirming that the "'applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine'"). Regardless, such a suit against an alleged third-party spoliator would have no bearing on this case.

9. All of the spoliation specific cases cited by Blixseth in his moving papers are distinguishable in that each involves an actual party to the underlying action being the spoliator.

See, e.g., Leon v. IDX Systems Corp., 464 F. 3d 951 (9th Cir. 2006) (finding that a party to the lawsuit despoiled evidence by deleting over 2,000 files from his company-issued laptop computer during the pendency of the litigation and imposing monetary spoliation sanction against the spoliating party); Glover v. BIC Corp., 6 F.3d 1318 (9th Cir. 1993) (alleged spoliator was party to case); United Med. Supply Co. v. United States, 77 Fed. Cl. 257 (2007) (imposing sanctions on defendant spoliator, who was a party to the lawsuit). Here, the Trust is not the alleged culprit, nor is there even an allegation or a shred of evidence indicating such. Edra Blixseth, Gary Deschenes, and Jory Russell are not parties to the pending litigation, and Montana courts have routinely held that a first party defendant is not responsible for the actions of a third party spoliator. See e.g., Oliver, 297 Mont. at 344-353; Bolan, 2007 U.S. Dist. LEXIS 94462; Peschel v. City of Missoula, 2008 U.S. Dist. LEXIS 98651 (Mont. Dist. 2008); Derek Brown Construction Co. v. Solberg, 2004 ML 95, 2004 Mont. Dist. LEXIS 2021 (Mont. Dist. 2004); Lenhard v. Erhardt, 2002 ML 1150, 2002 Mont. Dist. LEXIS 1845 (Mont. Dist. 2002). Thus, this Court should not impose any remedy whatsoever that would curtail or impact any rights of the Trust, an admittedly innocent party with regard to any claims of spoliation.

C.     **Lack of Relevance and Materiality**

10.    Blixseth's motion also fails to demonstrate that the allegedly spoliated evidence is relevant and material. In re Yellowstone Mountain Club, LLC, 415 B.R. at 790 ("[t]he Court is not persuaded by Blixseth's attempts to paint himself as a victim" of conspiracy). In addition, Blixseth's claims of conspiracy are irrelevant, as a matter of law, to the Trust's causes of action for intentional torts and fraudulent transfer, and thus there is no relevance or materiality to any of the purported evidence he cites in the instant Motion.

11.    It has already been demonstrated at trial that on September 30, 2005, Blixseth breached his fiduciary duties by intentionally and willfully appropriating proceeds from the $375 million Credit Suisse loan. Blixseth spent the proceeds for his own benefit while saddling the Yellowstone Debtors with an enormous debt. It is clear that Blixseth's acts constitute an intentional breach of his fiduciary duties. It is also clear that the alleged conspiracy between

4

Edra Blixseth and others does not provide Blixseth with a defense. Why? Because as a matter of law, the defense of superseding/intervening cause does not apply to intentional torts.

12. As this Court noted in a prior opinion in this case, Montana law recognizes superseding and intervening cause as a defense to certain actions. See In re Yellowstone Club, LLC, 415 B.R. at 778. Moreover, this Court also noted in its opinion that Montana "follows the Restatement (Second) of Torts in analyzing the defense." Id. (citing Jimison v. United States, 267 F. Supp. 674, 676 (D. Mont. 1967). The Jimison court observed that the Restatement's rules regarding superseding and intervening cause are found in §§ 440-453 of the Restatement (Second) of Torts. Section 440 defines superseding cause, and § 441 defines intervening force.

13. The defense of superseding and intervening cause only applies to negligence actions, not intentional torts. For instance, § 440 defines superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his **antecedent negligence** is a substantial factor in bringing about." (Emphasis added.) Likewise, § 441 states that "an intervening force is one which actively operates in producing harm to another after the actor's **negligent** act or omission has been committed." (Emphasis added.) The subsequent sections, §§ 442-453, determine whether an intervening force prevents the actor's antecedent negligence from constituting a legal cause. Restatement (Second) of Torts, § 441(2). Based on the plain reading of these rules that have been adopted in Montana, superseding and intervening cause is not a defense to an intentional tort.

14. Blixseth claims that a far flung "conspiracy" is the root cause of the "actual damages" suffered by the Debtors in this case. That claim, however, is irrelevant to the breach of fiduciary duty analysis because the remedy of disgorgement is available *regardless* of whether the victim has suffered "actual damages." See, e.g., County of San Bernadino v. Walsh, 158 Cal. App. 4th 533, 543 (2008) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty . . . . *Where a person profits from transactions conducted by him as a fiduciary, the proper measure of damages is full disgorgement of any secret profit made by the fiduciary regardless of whether the principal suffers any damage.*" (emphasis

5

added)); United States v. Bowen, 290 F.2d 40, 44 (5th Cir. 1961) ("The master as the party whose trust has been betrayed has the widest relief. He is entitled to all of the fruits of the servant's dereliction."). This illustrates that superseding or intervening events are irrelevant to the intentional breach of fiduciary duty analysis, and thus in this case, the Debtors are entitled to disgorgement whether or not there was some subsequent "conspiracy" that Blixseth now claims is the root cause of the "actual damages" suffered by the Debtors. Id.; see also Women's Fed. Sav. & Loan Ass'n v. Nevada Nat'l Bank, 811 F.2d 1255, 1260 (9th Cir. 1987) (reversing the trial court's ruling that the plaintiff was not entitled to disgorgement because the plaintiff failed to prove actual damages, and holding that "disgorgement would not be an inappropriate remedy" even if there were no actual damages). Thus, the relevant time period for analyzing a breach of fiduciary duty is the precise moment when Blixseth pulled out the proceeds and profited from them — not later time periods involving other events that Blixseth claims caused "actual damages" to the victim.

15. This Court should reject Blixseth's contrived allegation that some "conspiracy" between Edra Blixseth and others, which allegedly occurred three years after Blixseth breached his fiduciary duties, constitutes a defense to Blixseth's intentional misconduct. Blixseth took the money in 2005. Nothing from 2008 provides a legal defense to that intentional misconduct.

16. Blixseth also invokes this "grand conspiracy" defense to the Trust's fraudulent transfer claims. As above, however, this conspiracy defense fails as a matter of law.

17. The Trust has sued under Montana Code Annotated § 31-2-333(1)(b). This statute provides that a transfer is deemed fraudulent if it is done without receiving reasonably equivalent value and the debtor is insolvent or rendered insolvent by the transfer. The issue of insolvency is determined *at the time the transfer was made*. Montana Code Annotated § 31-2-333(i) states that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation if "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Id.

6

18.  California's version of the UFTA also states that constructive fraud requires that the transferor was insolvent at the time of the transfer, or rendered insolvent by the transfer. California Civil Code § 3439.05. In analyzing this statute, the California Supreme Court has likewise held that the time of the transfer is the relevant time for insolvency. Mejia v. Reed, 74 P.3d 166, 174-76 (Cal. 2003).

19.  Based on the plain reading of the fraudulent transfer statute, the relevant inquiry in connection with the Trust's fraudulent transfer claims is the date of the transfers. Accordingly, anything that transpired in 2008 has no relevance to the claims asserted herein and provides no basis for a continuance.

**D.  Timing**

20.  Blixseth's motion should also be denied because it comes at the proverbial eleventh hour.[2] Blixseth has had more than ample time to conduct discovery, even as relates to his groundless allegations of spoliation. There is no doubt that Blixseth received ample opportunity to conduct discovery even before the original trial in April 2009. Out of an overabundance of caution, however, this Court also granted an extraordinary continuance of the trial — for a period of nine months — to eliminate any possibility of a denial of due process in this case. As explained back on June 11, 2009, when the Court provided an explicit warning to Blixseth to commence discovery immediately:

> The evidence to date is not favorable for Blixseth. However . . . . [by] keeping this record open and allowing Blixseth additional time to prepare for trial, the Court will permit Blixseth an opportunity to further develop the merits of his case with new, not cumulative, evidence and will further permit and authorize Blixseth to immediately pursue any additional new, not cumulative, discovery that may be permissible under the Federal Rules of Bankruptcy Procedure, *without waiting* for the August scheduling conference.

In re Yellowstone Mountain Club, LLC, 415 B.R. 769, 791 (D. Mont. 2009) (emphasis added).

---

[2] In truth, Blixseth's current Motion comes after the eleventh hour, since discovery is already closed in this case.

7

21. The Court, in other words, granted to Blixseth an additional nine (9) months to conduct discovery and prepare for trial. Has Blixseth used that extraordinary extension of time to conduct meaningful discovery and prepare for trial? He has not. Instead, he has spent the vast majority of his time attempting to subvert and obstruct discovery, as detailed in this Court's recent sanctions ruling in the Crum case. (Mem. Op. of 1/11/2010, at 11-15.) Blixseth's subversion and obstruction of discovery resulted in a lengthy ruling from this Court on January 11, 2010, wherein the Court imposed severe sanctions against Blixseth as a result of his discovery misconduct. (Id. at 19-20.)

22. Blixseth has, in fact, conducted very little affirmative discovery, and has instead by and large sat on his rights. The record demonstrates that, rather than conducting discovery expeditiously beginning in May 2009, Blixseth largely sat on his rights until he engaged in a brief flurry of discovery activity in December 2009 — about seven months too late. Blixseth's decision to sit on his alleged rights should not now furnish a basis for him to avoid the completion of his trial. See, e.g., Nidds v. Schindler Elev. Corp., 113 F.3d 912, 921 (9th Cir. 1996) (denying second motion for continuance after party did not take depositions within time permitted under first continuance).

23. Blixseth's lack of diligence is telling. If Blixseth were truly concerned about conducting discovery, he would have proceeded on these matters many months ago. But he did no such thing. Moreover, when Blixseth belatedly moved to compel discovery and/or depositions from Edra Blixseth, Cross Harbor, and Credit Suisse, the Court rejected Blixseth's arguments. (See Docket Entries 466, 467, and 468.)

24. ***Blixseth's own words belie his claim that he has pursued discovery diligently.*** Blixseth's admission that he failed to pursue discovery diligently is clear from the following passage from his recently rejected Motion for Continuance: "It was only after significant probing, tips from a third party, and another deposition on July 8, 2009, that Timothy Blixseth and his counsel discovered this scheme to conceal and destroy these documents." (See Docket 474, Blixseth Mot. at 7 (citing Flynn Aff. ¶¶ 20-38).) Taking Blixseth's word at face value, he

8

had from July 8, 2009 to January 15, 2010 — *a period of over six (6) months* — to follow up on factual discovery relating to his claims of a "grand conspiracy" to destroy evidence. The fact that he failed to diligently pursue such discovery, or find any evidence of a conspiracy in the meager discovery he has actually conducted, is no one's fault but his own. Accordingly, Blixseth's decision to sit on his alleged rights should not now furnish a basis for this Court to grant sanctions or a continuance. See, e.g., Nidds, 113 F.3d at 921.

### E. Prejudice to the Trust

25. Finally, the Trust would suffer substantial prejudice if the trial were continued from its current date of February 24, 2010, or if any other order were entered adversely impacting the rights of the Trust. This is so for at least three reasons:

(a) First, there is a significant risk that Blixseth would use the additional time to dissipate the assets he controls, but which rightfully belong to the Trust. As this Court is aware, Blixseth has fought the disclosure of his assets at every turn. His relentless efforts to shield those assets make clear that any continuance will only serve to afford him additional opportunities to dissipate the assets that are at the very heart of this lawsuit.

(b) Second, any continuance would result in the continued dissipation of an important asset of the Yellowstone Mountain Club, LLC — Insurance Policy No. BCP 8779827 issued by The Cincinnati Insurance Co. ("Cincinnati Policy"). The Cincinnati Policy, which among other things provides D&O coverage, could be available to satisfy judgments — including judgments obtained by the Trustee under the Cincinnati Policy's "Bankruptcy Trustee Exception" — but that will be possible only so long as Blixseth's attorneys have not exhausted all the proceeds through defense costs. The Cincinnati Policy is a declining balance policy whereby defense costs reduce the amount of coverage available for judgments, and Blixseth's attorneys will only continue to waste valuable proceeds chasing far-flung and meritless conspiracy theories if a continuance is granted.

(c) Third, the Trustee has a statutory and plan-mandated duty to expeditiously marshal assets and wind up the affairs of the Trust. The Trustee's ability to carry out that mission

9

will be severely hampered by a continuance of the current trial date or by the imposition of any order that otherwise adversely impacts the rights of the Trust. See, e.g., In re Nevin, 135 B.R. 652, 653 (D. Haw. 1991) (finding that a trustee must "expeditiously liquidate the property of the estate"); In re Squaglia, 2008 Bankr. LEXIS, *13-14 (E.D. Cal. 2008) (holding that delay causes "inevitable injury" to creditors).

## CONCLUSION

26. In light of the foregoing, the Trustee respectfully requests that Blixseth's motion be denied in its entirety.

Dated: February 1, 2010

Respectfully submitted,

/s/ Shane P. Coleman
Charles W. Hingle
Shane P. Coleman
HOLLAND & HART LLP

**ATTORNEYS FOR MARC S. KIRSCHNER, AS TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**

Brian A. Glasser
Athanasios Basdekis
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555 (telephone)

Steven L. Hoard
John G. Turner, III
MULLIN HOARD & BROWN, LLP
500 South Taylor, Suite 800, LB# 213
P.O. Box 31656
Amarillo, Texas 79120-1656
(806) 372-5050 (telephone)

## CERTIFICATE OF SERVICE

I, the undersigned, certify under penalty of perjury that on February 1, 2010, or as soon as possible thereafter, copies of the foregoing pleading was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users: none.

/s/ Shane P. Coleman
Shane P. Coleman
Holland & Hart LLP

4718342_2.DOC