## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE MOUNTAIN CLUB, LLC**,

        Debtor.

Case No.  **08-61570-11**

---

**TIMOTHY L BLIXSETH**,

           Plaintiff.

-vs-

**MARC S KIRSCHNER, TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**,

        Defendant.

Adv No.  **09-00014**

## MEMORANDUM of DECISION

At Butte in said District this 7th day of September, 2010.

In this Adversary Proceeding, the now-captioned Defendant, Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust ("YCLT"), filed on August 27, 2010, and in response to a Memorandum of Decision and Judgment entered by this Court on August 16, 2010, a Motion for Reconsideration and to Alter or Amend the Order of Judgment of August 16, 2010, Pursuant to Federal Rules of Bankruptcy Procedure 9023 and 7052.  The matter is scheduled for hearing on September 20, 2010.  For the reasons discussed herein, the Court grants YCLT's Motion in part, denies said Motion in part, and vacates the September 20, 2010, hearing.

1

In the pending Motion, YCLT seeks reconsideration and clarification of the Court's Memorandum of Decision (Docket No. 575) and Judgment (the "Judgment") (Docket No. 576) or to alter or amend the judgment: (1) to affix damages in an amount certain in this case; (2) to confirm that the Court's Memorandum of Decision was not intended to modify the Third Amended Joint Plan of Reorganization ("Plan") (Docket No. 995) or the "waterfall" of payment priorities set forth in Section 7.17 thereof; (3) to address the applicability of the in *pari delicto* and unclean hands defenses; and (4) to address whether the doctrine of apportionment has been or should be applied here.

Rule 59, Fed.R.Civ.P., incorporated into the Federal Rules of Bankruptcy Procedure by Rule 9023, provides in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.  On a motion for a new trial in an action tried without a jury, the court may open the judgement if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."  Under Rule 59(e), "[a]ny motion to alter or amend a judgment must be filed not later than 10 days after entry of the judgment."  Rule 59(e) includes motions for reconsideration. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); 11 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2nd § 2810.1.

In *Brandt v. Esplanade of Central Montana, Inc., et al.* (*"Brandt"*), 19 Mont. B.R. 401, 403 (D. Mont. 2002), the United States District Court for the District of Montana, in affirming this Court's decision, discussed amendment of an order under Rule 59(e):  "Amendment or

2

alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law.  *School Dist. No. 1J, Mutnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)."  *See also In re Teigen*, 11 Mont. B.R. 91, 92 (Bankr. D.Mont. 1992).  A motion for reconsideration should not be granted if the above test is not met, absent highly unusual circumstances.  *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Finally, a Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.  *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

As YCLT correctly argues, on August 16, 2010, this Court issued a Memorandum of Decision and Judgment in this Adversary Proceeding ordering and adjudging that "Judgement is entered in favor of Blixseth, in part, and YCLT, in part, with each party to pay their own fees and costs of suit; and YCLT is awarded that amount of money required to pay: (1) all allowed claims of Class 1 (priority non tax claims), Class 2 (other secured claims), Class 4 (general unsecured claims, except claims attributable to the First Lien Lender, if any), Class 5 (convenience claims), Class 6 (intercompany claims), Class 9 (pioneer/frontier member rejection claims), Class 10 (American bank claims), Class 11 (allowed Prim secured claims), Class 12 (honorary member rejection claims), Class 13 (founder's circle member rejection claims), Class 14 (company member rejection claims) and those claims that Blixseth identifies as "not classified" on Exhibit A attached to his Post-Trial Brief filed March 19, 2010, at docket entry no. 571, and (2) YCLT for the fees and costs it has incurred, and will incur, objecting to and liquidating such claims."

YCLT now requests that the Court reconsider four aspects of its August 16, 2010, Memorandum of Decision and Judgment.

DAMAGES CALCULATION

YCLT argues it is necessary and appropriate to fix a definitive amount of damages lest the parties be in a constant dispute over the exact amount of the Judgment.  While the Court would have certainly preferred to enter a more definite Judgment, the Court did not have enough facts to determine what was owed to each of the aforementioned classes.  While YCLT maintains that the damages in this case total $286.4 million, in the alternative, YCLT now submits after the fact that the appropriate damage calculation for the Court's current Judgment is $40,067,962.43 plus such other amounts as may later be determined by this Court as owing on allowed claims, together with all fees and costs incurred by YCLT in objecting to and liquidating claims.  If $40,067,962.43 is the amount that the Debtors owed to all creditors, save Credit Suisse, Cayman Island Branch, on their petition date, the Court will grant YCLT's request by amending the Judgment to reflect an exact dollar amount.

DID THE COURT MODIFY DEBTORS' CONFIRMED PLAN

YCLT next seeks confirmation that this Court's August 16, 2010, Memorandum of Decision and Judgment did not *sua sponte* modify Debtors' Third Amended Joint Plan of Reorganization, the Order confirming such Plan or the Settlement Term Sheet.  This Court in no way intended to nor did it modify the Debtor's Third Amended Joint Plan of Reorganization, the Order confirming such Plan or the Settlement Term Sheet.  Indeed, "the [Debtors'] Plan has been substantially consummated. YCLT has been in existence for more than one year, the Yellowstone Club has been sold, and substantial claims and adversary proceedings have been settled and

4

allowed."

YCLT asserts that Credit Suisse, Cayman Island Branch, has received an Equity Purchase Note in the amount of $80 million and is currently owed $229,376,110.42.  Under the Debtors' confirmed Third Amended Joint Plan of Reorganization and the Settlement Term Sheet, Credit Suisse is to receive pro rata payment on the $229,376,110.42 at the lowest level of priority, the "fourth tranche" of the confirmed Plan.

 This Court agrees with YCLT that "[a] confirmed reorganization plan operates as a final judgment with res judicata effect."  *Unsecured Creditors Comm. v. Southmark ( In re Robert L. Helms Construction & Development Co., Inc.)*, 139 F.3d 702, 704 (9th Cir.1998).  Indeed, the strong policy favoring finality in reorganization cases has led courts to give preclusive effect to a confirmation order, even if the confirmed bankruptcy plan contains illegal provisions.  *See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999). Although the BAP's ruling in *In re Pardee* was affirmed, a subsequent decision of the Ninth Circuit Court of Appeals held that "[a]lthough confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor."  *Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir 2004); *see also Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir. 2000) (the confirmation order is res judicata and binding upon the debtor and creditors as to all issues which have been decided or which could have been decided before confirmation); and *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) (confirmation of chapter 13 plan is res judicata only as to issues that can be raised in less formal procedure for contested matters, not matters that must be resolved in

adversary proceeding).

At the time of confirmation, the Court had concluded Part I of the trial in this Adversary Proceeding.  The parties in Part I of the trial were Credit Suisse, Blixseth, the Debtors and the Official Committee of Unsecured Creditors.  The Debtors, the Official Committee of Unsecured Creditors and Credit Suisse had presented their cases in Part I of the trial.  As explained in the August 16, 2010, Memorandum of Decision, the Court continued the trial following Part I for the sole purpose of affording Blixseth due process.

The Settlement Term Sheet, on the other hand, was an agreement between Credit Suisse, the Debtors, the Official Committee of Unsecured Creditors and CrossHarbor Capital Partners.  Blixseth was not a party to the Settlement Term Sheet.  Blixseth also objected to confirmation of Debtors' Third Amended Joint Plan of Reorganization.  In fact, Blixseth appealed the Order confirming Debtors' Third Amended Joint Plan of Reorganization and that appeal is still pending.

Credit Suisse now appears to argue, through YCLT, that it can have no culpability for the $375 million loan with the Debtors and Blixseth because an agreement with Debtors, the Official Committee of Unsecured Creditors and CrossHarbor Capital Partners paved the way to confirmation of Debtors' Third Amended Joint Plan of Reorganization.  YCLT's argument would have merit in a normal case, but this case is anything but normal.  With no meaningful due diligence and a noncompliant appraisal, Credit Suisse loaned $375 million to the Debtors so that the Debtors could make loans or distributions to its members.  In other words, the loan was for purposes wholly unrelated to the Debtors' business.   The loan at issue was not normal under any circumstances, and the greed of not only Blixseth, but also Credit Suisse, shocked the conscience

6

of the Court.

Notwithstanding this pending Adversary Proceeding and the shocking facts herein, YCLT makes the crabbed argument that because of confirmation, this Court should reward Credit Suisse for its greedy antics.  Neither Blixseth nor Credit Suisse deserve to benefit from their actions.  To that end, the Court determined that Blixseth should pay every single cent that was owed to anybody, other than Credit Suisse, on the date Debtors filed their bankruptcy petitions.  While such ruling arguably impacts the lowest tranche of creditors, the Court did not intend to alter the Debtors' confirmed Plan.  The Court would note that YCLT asserts in its Motion that "substantial claims and adversary proceedings have been settled and allowed.  For example, claims and adversary proceedings exceeding in the aggregate over $150 million involving the Yellowstone Club World, LLC ("YCW"), Greg LeMond and his affiliated group, the castle in France known as Chateau de Farcheville, and numerous claims and adversary proceeding involving CrossHarbor and the estates of Edra Blixseth and Big Springs Realty, LLC have been extensively litigated, then resolved."  Under the Debtors' confirmed Plan and in light of this Court's Judgment, Credit Suisse is entitled to all the proceeds from resolution of the aforementioned claims.

*IN PARI DELICTO*, UNCLEAN HANDS and APPORTIONMENT

YCLT next argues that *in pari delicto* and unclean hands are not applicable in this case because such defenses only apply when a plaintiff is at equal fault with the defendant.  YCLT conveniently ignores the fact that Credit Suisse was the only Plaintiff in this Adversary Proceeding when it filed the complaint against the Official Committee of Unsecured Creditors on February 25, 2009.  As the Court stated earlier, this has not been a typical case involving a

7

plaintiff and a defendant.  During Part I of the trial, this Court had four parties before it; Credit Suisse and Blixseth versus the Debtors and the Official Committee of Unsecured Creditors. Following Part I of the trial, the Court entered a partial and interim order against Credit Suisse so Debtors' confirmation could move forward.  The Court reserved entering any ruling involving Blixseth and instead set the stage for Part II of the trial.  Between entry of the partial and interim order against Credit Suisse and Part II of the trial, the Debtors' Third Amended Joint Plan of Reorganization was confirmed, the Official Committee of Unsecured Creditors was dissolved and YCLT stepped into the shoes of the Debtors.  Following this Court's partial and interim order, Credit Suisse, through negotiations, successfully placed itself behind the shield of YCLT so that parties who were once adversaries, namely the Debtors and Credit Suisse, were now allies.  In addition, Credit Suisse's Montana counsel in Part I of the trial became YCLT's Montana counsel for Part II of the trial.

While YCLT is the now named Defendant in this action, YCLT is also advocating for the original Plaintiff in this action, Credit Suisse.  Given the unique facts in this case, the Court will not enter judgment in favor of Credit Suisse and against Blixseth, or vice versa.  Blixseth and Credit Suisse were partners in the loan debacle and the Court is not inclined to enter a judgment that would benefit either of the wrongdoers to the other's detriment.  The Court has not entered any judgment, other than subordination, against Credit Suisse and the Court is not apportioning blame between Credit Suisse and Blixseth.  Rather, this Court has entered a Judgment that simply precludes Credit Suisse from sharing in any judgment against Blixseth.  For the reasons discussed herein, the Court will enter a separate order providing as follows:

IT IS ORDERED that Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating

Trust's Motion for Reconsideration and to Alter or Amend the Order of Judgment of August 16, 2010, Pursuant to Federal Rules of Bankruptcy Procedure 9023 and 7052 filed August 27, 2010, is GRANTED, in part and DENIED, in part; the Court will amend its August 16, 2010, Judgment to reflect that Judgment is entered against Blixseth in the amount of $40,067,962.43; and YCLT's Motion for Reconsideration and to Alter or Amend the Order of Judgment is DENIED in all other respects.

IT IS FURTHER ORDERED that the hearing scheduled for September 20, 2010, on Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust's Motion for Reconsideration and to Alter or Amend the Order of Judgment of August 16, 2010, Pursuant to Federal Rules of Bankruptcy Procedure 9023 and 7052, is VACATED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana